AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America<br>v.<br>JOSHUA HAM<br>IRVING ANDERSON<br>EVERETTE WILLIAMS<br>EDWARD DUNCOMBE and<br>MAXWELL TATE<br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.  13-8328-WM |

FILED by _____ D.C.
JUL 09 2013
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 8, 2013__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, USC, Section 846 | Conspiracy to PWID 5 kilograms or more of Cocaine. |
| Title 21, USC, Section 841 | PWID over 5 kilograms or more of Cocaine. |

This criminal complaint is based on these facts:
See Attached Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Richard Calenda, S/A, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 9, 2013

_____
Judge's signature

City and state: __West Palm Beach, FL__   William Matthewman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Richard Calenda, being first duly sworn, hereby depose and state:

1). I am a Special Agent of the United States Immigration and Customs Enforcement (ICE), Homeland Security Investigations, formerly the United States Customs Service and am currently assigned to the office of the Assistant Special Agent In Charge, West Palm Beach, Florida. I have been a Special Agent of the United States Immigration and Customs Enforcement/ United States Customs Service for 21 years, and have a total of 24 years of law enforcement experience.

2). As a Special Agent with the United States Immigration and Customs Enforcement, Homeland Security Investigations, my duties and responsibilities include conducting criminal investigations of individuals and businesses who have violated federal laws, particularly those laws as found in Titles 8, 18, 19 and 21 of the United States Code. I have obtained formal training and experience from numerous investigations involving immigration, the importation of narcotics, money laundering, and violations of Customs and Immigration law.

3). This affidavit is submitted solely to establish the existence of probable cause for the arrests of JOSHUA HAM, IRVING ANDERSON, EVERETTE WILLIAMS, MAXWELL TATE, and EDWARD DUNCOMBE. Therefore, I have not set forth every fact known to me regarding the investigation.

4). Several United States law enforcement agencies are involved in this investigation. Accordingly, although I have been personally involved in the investigation, some of the probable cause information relied upon in this affidavit has been received from

other investigators. Thus, this affidavit is based both upon my personal knowledge, as well as information relayed to me by other law enforcement agents assigned to this investigation.

5). On July 8, 2013 at approximately 9:09 a.m., officers assigned to a U.S. Customs Border Protection (CBP) aircraft observed a vessel later identified as a 27 foot white Mako ("MAKO") bearing FL 3646PC registration and another vessel later identified as a 36 foot white fishing vessel, "REMEDY," converged within one foot of each other. The location was approximately 10 nautical miles east of Lake Worth Inlet, West Palm Beach, Florida. The CBP officer observed two white males on the "REMEDY," and two black males on the "MAKO".

6). CBP Officers aboard the aircraft observed a passenger on the "MAKO" pass a couple of large bundles to a passenger on the "REMEDY". Then, the "MAKO" turned east and headed in the direction of the Bahamas. The "REMEDY" continued on a westerly course towards the West Palm Beach area.

7). CBP Marine Officers stopped the "REMEDY" approximately 8 nautical miles east of the Lake Worth inlet area. The CBP officers observed two duffel bags in the forward cabin of the vessel and a large white ice cooler. Pursuant to their border search authority, agents searched the duffel bags and white ice cooler. The duffel bags and ice cooler contained "bricks" that were packaged in a manner consistent with contraband, namely narcotics. A preliminary count indicated 127 kilogram sized bricks containing cocaine, and 7 packages (approximately 3 pounds each) containing marijuana.

8). The two subjects aboard the "REMEDY" were identified as JOSHUA HAM and IRVING ANDERSON. HAM was the captain of the vessel and during a post-*Miranda* statement, HAM admitted that he was aware that the items that he received during the sea transfer contained contraband/illegal items. HAM identified an individual named "AVERY," also known as "AV," as the person who was scheduled to receive the packages at a Longhorn restaurant parking lot in Davie, Florida later that same day (July 8, 2013).

9). ANDERSON also provided a post-*Miranda* statement and indicated that he was approached by HAM to participate in this venture and willingly agreed to do so. ANDERSON also stated that he "absolutely" knew that he was picking up drugs, specifically cocaine, and that he would later be meeting with "AV" to complete the drug transaction. ANDERSON indicated that he had participated in previous similar narcotics ventures with HAM and "AV". ANDERSON stated that he and HAM were supposed to receive approximately $1500.00 for each kilogram of cocaine that was being transported and later delivered to "AV".

10). HAM and ANDERSON each reviewed a picture of the "MAKO" and identified it as the vessel from which they were provided the narcotics packages that were onboard their vessel (REMEDY).

11). Law enforcement marine units were able to intercept the "MAKO" as it was enroute back to the Bahamas. The MAKO was stopped approximately 35 nautical miles east of the West Palm Beach area, while still in international waters. The two subjects aboard the vessel were identified as Bahamian citizens EDWARD DUNCOMBE and MAXWELL TATE. They were both escorted back to the U.S.

Coast Guard Station, Riviera Beach, Florida, and then interviewed at the office of Homeland Security Investigations, West Palm Beach, Florida. DUNCOMBE refused to waive his *Miranda* rights and was not questioned. TATE gave a post-*Miranda* statement and indicated that he was approached by DUNCOMBE approximately one week prior. DUNCOMBE asked TATE if he (TATE) "wanted to go on a boat ride?" TATE agreed and stated that he was fully aware that he would be transporting drugs. TATE also stated that he knew the packages he was transporting contained cocaine and marijuana. TATE indicated that he was picked up in a vehicle by DUNCOMBE in Freeport, Bahamas on the morning of July 8, 2013, and then they drove to a nearby canal where the drugs were secreted in the duffel bags. DUNCOMBE and TATE placed the duffel bags inside their vehicle and then later placed the bags on board the "MAKO". TATE stated that he was instructed by DUNCOMBE, who was the boat captain, to throw a hand held global positioning system overboard when marine law enforcement officers were approaching their vessel. TATE also indicated that he observed DUNCOMBE throw his (DUNCOMBE's) cell phone overboard, just prior to the law enforcement boarding. TATE reviewed pictures of HAM and ANDERSON and identified them as the individuals that he transferred the packages to earlier in the day.

12). HAM and ANDERSON agreed to participate in a controlled delivery of the narcotics packages to "AV" at the aforementioned Longhorn restaurant, Davie, Florida. A replica of the narcotics packages, known as "sham" was substituted for the actual narcotics. "AV" was later identified as EVERETTE WILLIAMS. WILLIAMS met HAM and ANDERSON in the parking lot of the Longhorn restaurant on July 8,

    2013 at approximately 5:15 p.m. HAM transferred to WILLIAMS the keys of the rental vehicle that he and ANDERSON were driving. Inside the rental vehicle were duffel bags and the same white cooler, each of which contained the "sham" cocaine. These items were inside the rear hatch of the vehicle. HAM and ANDERSON exited the vehicle and then "AV" (WILLIAMS) drove the rental vehicle a short distance. Undercover agents followed WILLIAMS. WILLIAMS then stopped and ran from the vehicle. A short pursuit followed and WILLIAMS was taken into custody without incident. A post-*Miranda* interview was conducted with WILLIAMS, and he stated that the reason he stopped the vehicle and ran was because he realized that he was being followed by law enforcement officers and "did not want to go to jail." WILLIAMS stated that the reason he would be going to jail was because he knew that the packages in the vehicle contained cocaine.

13).    Your affiant submits that there exists probable cause to believe that on or about July 8, 2013, JOSHUA HAM, IRVING ANDERSON, EVERETTE WILLIAMS, MAXWELL TATE, and EDWARD DUNCOMBE did conspire to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 846, and did knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of

cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

*[signature]*
RICHARD CALENDA
Special Agent
United States Homeland
Security Investigations

Sworn to and subscribed before me
this 09th-day of July, 2013.

*[signature]*
William Matthewman
United States Magistrate Judge
West Palm Beach, Florida

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-8328-WM

UNITED STATES OF AMERICA

v.

JOSHUA HAM
IRVING ANDERSON
EVERETTE WILLIAMS
EDWARD DUNCOMBE and
MAXWELL TATE,

        Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

        Respectfully submitted,

        WIFREDO A. FERRER
        UNITED STATES ATTORNEY

BY: _____
        RINKU TRIBUIANI
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 0150990
        500 S. Australian Avenue, Suite 400
        West Palm Beach, FL 33401-6235
        Tel: (561) 820-8711
        Fax: (561) 820-8777
        Rinku.Tribuiani@usdoj.gov